UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CREDITINCOME LIMITED, *et al.*,

                     *Plaintiffs*,

    v.

THE SWISS CONFEDERATION,

                     *Defendant*.

Case No. 24-cv-4316 (DEH)

---

## DECLARATION OF ULYSSES VON SALIS

I, Ulysses von Salis, Niederer Kraft Frey AG, Bahnhofstrasse 53, 8001 Zurich, Switzerland, declare as follows:

### I. Background and Qualifications

1. I studied law at the University of Zurich and graduated in 1996 with a doctorate degree (Dr. iur.) *summa cum laude*.

2. I passed the bar exam in Switzerland in 1997.

3. I passed the California Bar Exam in 1999 and graduated with an LL.M. from Harvard Law School in 2000.

4. I joined Niederer Kraft Frey AG as an associate in 2001.

5. I became a partner of Niederer Kraft Frey AG in 2006.

### II. Scope of Engagement and Questions Presented

6. I have been engaged by the Swiss Confederation to address certain issues of Swiss law related to the action captioned above (the "Action").

7. My opinion has been requested on the following topics:

    a. Whether Switzerland is an adequate forum for the Action, including:

        i. Whether litigation of the subject matter of the Action is permitted in Swiss courts;

        ii. Whether Swiss courts have jurisdiction over claims against the Swiss Confederation;

        iii. Whether plaintiffs in this Action would have access in Swiss courts to adequate procedures for obtaining evidence; and

        iv. Whether a judgment of a U.S. court would be recognized under Swiss law;

    b. What rules, regulations, or procedures under Swiss law and the Hague Evidence Convention the parties would have to follow to obtain evidence located in Switzerland for use in this Action; and

    c. The relevance of pending litigation in Switzerland concerning the subject matter of the Action.

## III. Issues of Swiss Law

### A. Switzerland is an adequate forum for the Action

*i. Litigation of the subject matter of the Action is permitted in Swiss courts*

8. Plaintiffs in this Action seek to hold the Swiss government monetarily liable for the actions, undertaken in Switzerland, of the Swiss government with respect to Credit Suisse, a Swiss bank. Furthermore, plaintiffs seek to challenge the actions of the Swiss government as allegedly "unauthorized" under the terms and conditions governing the AT1 notes issued by Credit Suisse, which are governed by Swiss law. The courts of Switzerland are the natural forum to adjudicate a dispute against Swiss state actors regarding their actions in Switzerland and which raises matters under Swiss law. Swiss courts are empowered to adjudicate litigation concerning the subject matter of this Action—including the authority of the Swiss Federal Council, the Swiss National

Bank, and the Swiss Financial Market Supervisory Authority (FINMA) and any alleged potential liability of the Swiss Confederation in these circumstances.

       *ii. Swiss courts have jurisdiction over claims against the Swiss Confederation*

9.    Swiss law permits suits against the Swiss Confederation for damages. Swiss courts have jurisdiction to hear such claims for damages filed against the Swiss Confederation. The Swiss Confederation is not immune from such suits. Bundesgesetz über die Verantwortlichkeit des Bundes sowie seiner Behördemitglieder und Beamten (Verantwortlichkeitsgesetz, VG) [Federal Act on the responsibility of the Confederation and its officials and civil servants, Responsibility Act, RA], SR 170.32, art. 3 et seqq., art. 10 para. 1 und 2 in conjunction with art. 31 et seqq. Bundesgesetz über das Bundesverwaltungsgericht (Verwaltungsgerichtsgesetz, VGG) [Federal Act on the Federal Administrative Court, Administrative Court Act, ACA], SR 173.32, and with art. 120 Bundesgesetz über das Bundesgericht (Bundesgerichtsgesetz, BGG) [Federal Act on the Federal Supreme Court, Federal Supreme Court Act, FSCA], SR 173.110; Schweizerische Zivilprozessordnung (ZPO) [Civil Procedure Code, CPC], SR 272, art. 5 para. 1.f. Decision of the Federal Supreme Court BGer 2E_2/2024 of April 11, 2024 consid. 2.2.

       *iii. Plaintiffs would be entitled to adequate evidentiary procedures in Swiss courts*

10.    Alleged claims for damages against the Swiss Confederation which are disputed by the Swiss Confederation can be submitted to an independent court. Art. 10 para. 1 und 2 RA in conjunction with art. 31 et seqq. ACA and with art. 120 FSCA; art. 5 para. 1.f. CPC. Decision of the Federal Supreme Court BGer 2E_2/2024 of April 11, 2024 consid. 2.2. Parties to Swiss proceedings and third parties have a duty to cooperate in the taking of evidence, including a duty to tell the truth as a party or witness and to produce non-privileged documents. Bundesgesetz über das Verwaltungsverfahren (Verwaltungsverfahrensgesetz, VwVG) [Federal Act on Administrative Procedure, APA], SR 172.021, art. 13 para. 1, art. 15, art. 17 (Switz.); Bundesgesetz über den

Bundeszivilprozess [Federal Act on the Federal Civil Procedure, FCPA], SR 273, art. 43 et seqq. (Switz.); art. 160 para. 1 CPC (Switz.).

11.   When assessing evidence, Swiss courts may take into account a party's unjustifiable refusal to comply with a court order enforcing the duty to cooperate. Art. 13 para. 2 APA, art. 40 FCPA, art. 164 CPC. Swiss courts may also summon witnesses to give testimony under penalty of perjury. Art. 44 para. 2 and 3 and art. 45 para. 2 FCPA; art. 19 APA; art. 169 cum art. 171 para. 1, art. 167 CPC. Third parties who do not comply with a summons can be compelled to appear and noncompliance can result in a disciplinary fine, a police summons, or criminal prosecution for contempt of an official order. Art. 44 para. 2 and 3 FCPA; art. 19 and art. 60 APA; art. 167 CPC; Schweizerisches Strafgesetzbuch [StGB] [Criminal Code], SR 311, art. 292 (Switz.).

12.   Plaintiffs in this Action, however, would not be able to compel individuals and entities in Switzerland—outside of international legal assistance—to produce documents located in Switzerland that are not available in the United States without risking violation of Swiss law, cf. below under III.B. Arts. 271, 273 StGB.

> iv. *A judgment of a U.S. court may not be enforceable in Switzerland against the Swiss Confederation*

13.   The United States and Switzerland do not have a treaty providing for reciprocal recognition and enforcement of court judgments in civil matters.

14.   The enforceability of a judgment of a U.S. court against a Swiss defendant, therefore, would require approval of a Swiss court, which would need to evaluate (a) whether the foreign court issuing the judgment had international jurisdiction, (b) whether the judgment is final or no longer subject to any ordinary appeal, and (c) whether the judgment contravenes Swiss public policy and the defendant was duly summoned. *See* Bundesgesetz über das Internationale

Privatrecht (IPRG), [Federal Act on Private International Law, PILA], SR 291, art. 25 (Switz.).

15.     Furthermore, the Federal Act on Private International Law (PILA), SR 291, art. 25 (Switz.), the Swiss statute governing the recognition and enforceability of foreign judgments, applies only to claims under private law. As a matter of Swiss law, plaintiffs' claims in this Action are arguably properly characterized as public law claims challenging the exercise of governmental authority. If plaintiffs' claims are considered public law claims, PILA would not apply to them, and consequently, there would be no legal basis under Swiss law for recognition and enforcement of a foreign judgment resolving them.

**B.     Obtaining evidence located in Switzerland for use in this Action will present significant challenges**

16.     Under Swiss law, the taking of evidence constitutes a judicial function reserved to Swiss courts or authorities. Taking evidence in Switzerland for use in a foreign court proceeding without authorization by the competent Swiss authorities constitutes the unauthorized and unlawful exercise of foreign sovereign power, which is an offense under art. 271 para. 1 of the Swiss Criminal Code. *See* Bundesgericht [BGer] [Federal Supreme Court], decision of Nov. 1, 2021, Entscheidungen des Schweizerischen Bundesgerichts [BGE] 148 IV 66 consid. 1.4 (Switz.).

17.     Outside of international legal assistance and without authorization by the competent Swiss authorities, a party seeking to compel a witness domiciled in Switzerland to travel to the United States for deposition or trial under threat of sanctions for non-compliance would be in violation of art. 271 para. 1 of the Swiss Criminal Code.

18.     Similarly, litigants in foreign legal proceedings cannot compel individuals or entities in Switzerland to produce documents from Switzerland that are not available in the foreign forum without risking violation of art. 271 para. 1 of the Swiss Criminal Code. *See* BGer, decision of Nov. 1, 2021, BGE 148 IV 66 consid. 1.4. The risk of prosecution under Swiss law applies not

only to the party taking the evidence, but also to the third party involved in gathering such evidence in Switzerland.

19. To comply with Swiss law, parties in foreign legal proceedings regarding civil claims must take evidence in Switzerland in accordance with the Hague Convention of March 18, 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters ("Hague Evidence Convention"). Requests for evidence under the Hague Evidence Convention are subject to Switzerland's reservation to the Convention, which states:

> "Re Article 23
>
> 6. In accordance with Article 23, Switzerland declares that Letters of Request issued for the purpose of obtaining pre-trial discovery of documents will not be executed if:
>
> a) the request has no direct and necessary link with the proceedings in question; or
>
> b) a person is required to indicate what documents relating to the case are or were in his/her possession or keeping or at his/her disposal; or
>
> c) a person is required to produce documents other than those mentioned in the request for legal assistance, which are probably in his/her possession or keeping or at his/her disposal; or
>
> d) interests worthy of protection of the concerned persons are endangered."[1]

20. Discovery in Switzerland, therefore, is permissible only by virtue of the Hague Evidence Convention and only within those enumerated limitations.

21. Furthermore, the Hague Evidence Convention applies only to disputes in civil or commercial matters. Claims against the Swiss Confederation based on alleged government liability could be considered as not being covered by the term "civil or commercial matters"

---

[1] Unofficial English translation by Hague Conference on Private International Law (HCCH).

because the scope of that term, as applied to governmental defendants, has not been definitively clarified. If such claims are not disputes in "civil or commercial matters," then—from a Swiss law perspective—there would be no legal basis for the granting of legal assistance at all. In addition, art. 12 para. 1.b of the Hague Evidence Convention provides that the execution of a request for mutual assistance may be refused to the extent that the requested state considers the execution to be likely to jeopardize its sovereign rights or its security. Requests asking for governmental records, communications and documents or testimony of government officials about their official activities subject to official secrecy regulations could reasonably be considered to jeopardize the sovereign rights of the Swiss Confederation and so refused. For these reasons, even if the parties seek to obtain evidence for use in this Action pursuant to the procedures of the Hague Evidence Convention, those procedures may not entitle them to evidence relevant to the disputed issues in this Action, which principally concern the actions of the Swiss government.

22. Further, discovery in this Action will face an additional hurdle: The records of the Swiss Confederation and its agencies and instrumentalities are kept in one of the four official languages of Switzerland—French, German, Italian, or Romansh. Official documents are not translated into English as a matter of course.

### C. There is already litigation in Switzerland concerning the subject matter of the Action

23. The decision by FINMA to order Credit Suisse to write down its AT1 instruments in March 2023, *see* Compl. ¶ 59, has already been challenged by (alleged) former holders of those instruments.

24. Switzerland's Federal Administrative Court has received at least 230 claims filed by at least 2,500 (alleged) former Credit Suisse AT1 instrument holders against FINMA, challenging the legality of the FINMA write-down order. Press Release, Swiss Federal

Administrative Court, Press Release Regarding Strike-off Decision B-2254/2023 of 15 May 2023 (May 23, 2023), https://www.bvger.ch/media-releases/17ef53e2-d002-4b4f-8457-1f7d54953153/en/mm_b-2254-2023_en_web.pdf. Those claims allege that FINMA's order to Credit Suisse was unlawful.

25. Whether the FINMA write-down order to Credit Suisse was lawful—the issue in dispute in the pending litigation in the Federal Administrative Court—is an issue directly relevant to the claims in this Action, which allege that the FINMA write-down order to Credit Suisse was "unauthorized." *See* Compl. ¶¶ 63, 67. If the Federal Administrative Court concludes that the FINMA write-down order was unlawful, it has the authority to set aside the order.

26. Credit Suisse AT1 instrument holders who claim to have suffered a loss as a result of an allegedly unlawful act by the Swiss government may also submit a request for compensation to the government and, if such request is rejected, have their claim for compensation heard by independent courts. The statute of limitations for such a claim for compensation is three years from knowledge of the alleged damages, but in any event ten years from the date on which the alleged harmful conduct took place or ceased. Art. 20 para. 1 RA, in conjunction with Obligationenrecht [Code of Obligations], SR 220, art. 60 para. 1 (Switz.). That three year statute of limitations is in contrast to the 30-day deadline to which plaintiffs apparently refer, which is a deadline of Swiss administrative law that generally applies to actions seeking to overturn the decision of a regulatory agency. *See* Compl. ¶ 68.

27. Because the disputed issues in the pending proceedings against FINMA in the Federal Administrative Court are closely related to, and overlap with, the disputed issues in this Action, Switzerland is the more suitable forum to decide the disputed issues in this Action in a manner that avoids inconsistent rulings and judgments.

\*\*\*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and I understand that this document may be filed in an action or proceeding in a court of law.

Executed at Bahnhofstrasse 53, 8001 Zurich, Switzerland, on December 4, 2024.

_____
Ulysses von Salis