**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

CREDITINCOME LIMITED, *et al.*,

                             *Plaintiffs*,

         v.

THE SWISS CONFEDERATION,

                             *Defendant*.

Case No. 24-cv-4316 (DEH)

ORAL ARGUMENT REQUESTED

---

**THE SWISS CONFEDERATION'S REPLY MEMORANDUM OF LAW**
**IN FURTHER SUPPORT OF ITS**
**MOTION TO DISMISS THE AMENDED COMPLAINT**

WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, New York 10019
Telephone: (212) 403-1000
Facsimile: (212) 403-2000

*Attorneys for the Swiss Confederation*

## TABLE OF CONTENTS

Page

I. THE COURT LACKS JURISDICTION BECAUSE SWITZERLAND IS IMMUNE FROM SUIT ................................................................................................. 1

    A. The FINMA write-down order was not an act taken in connection with a commercial activity of Switzerland ..................................................................... 1

    B. The FINMA write-down order caused no direct effect in the United States ................................................................................................................... 5

II. THE COURT SHOULD DISMISS THIS ACTION IN FAVOR OF A SWISS FORUM ............................................................................................................................ 7

III. THE COMPLAINT FAILS TO STATE A CLAIM FOR RELIEF .............................. 10

## TABLE OF AUTHORITIES

Page

**Cases:**

*In re Alcon S'holder Litig.*,
   719 F. Supp. 2d 263 (S.D.N.Y. 2010)..................................................................................9

*Atlantica Holdings* v. *Sovereign Wealth Fund Samruk-Kazyna JSC*,
   813 F.3d 98 (2d Cir. 2016)....................................................................................................5

*Azima* v. *RAK Inv. Auth.*,
   305 F. Supp. 3d 149 (D.D.C. 2018)......................................................................................5

*Bank of Credit & Com. Int'l (Overseas) Ltd.* v. *State Bank of Pakistan*,
   273 F.3d 241 (2d Cir. 2001)..................................................................................................8

*Barnet* v. *Ministry of Culture & Sports of the Hellenic Republic*,
   961 F.3d 193 (2d Cir. 2020)..................................................................................................3

*Bausch & Lomb Inc.* v. *Mimetogen Pharms., Inc.*,
   2016 WL 2622013 (W.D.N.Y. May 5, 2016).......................................................................9

*Brown & Brown, Inc.* v. *Johnson*,
   25 N.Y.3d 364 (2015) ..........................................................................................................9

*Castillo* v. *Shipping Corp. of India*,
   606 F. Supp. 497 (S.D.N.Y. 1985) .......................................................................................9

*Chang* v. *Baxter Healthcare Corp.*,
   599 F.3d 728 (7th Cir. 2010) ................................................................................................8

*Compania Naviera Joanna SA* v. *Koninklijke Boskalis Westminster NV*,
   569 F.3d 189 (4th Cir. 2010) ................................................................................................9

*Corporación Mexicana de Mantenimiento Integral* v. *Pemex-Exploración y Producción*,
   832 F.3d 92 (2d Cir. 2016)....................................................................................................9

*Daou* v. *BLC Bank, S.A.L.*,
   42 F.4th 120 (2d Cir. 2022) ..............................................................................................5, 6

*Fir Tree Cap. Opportunity Master Fund, LP* v. *Anglo Irish Bank Corp.*,
   2011 WL 6187077 (S.D.N.Y. Nov. 28, 2011)......................................................................3

*Garb* v. *Republic of Poland*,
    440 F.3d 579 (2d Cir. 2006)......................................................................................4, 5

*Iragorri* v. *United Techs. Corp.*,
    274 F.3d 65 (2d Cir. 2001)........................................................................................7, 9

*Maurizio* v. *Goldsmith*,
    230 F.3d 518 (2d Cir. 2000).........................................................................................10

*Merlini* v. *Canada*,
    926 F.3d 21 (1st Cir. 2019)............................................................................................4

*Pablo Star Ltd.* v. *Welsh Gov't*,
    961 F.3d 555 (2d Cir. 2020)..........................................................................................3

*Perrin* v. *Sw. Water Co.*,
    2014 WL 10979865 (C.D. Cal. July 2, 2014).............................................................10

*Republic of Argentina* v. *Weltover, Inc.*,
    504 U.S. 607 (1992).......................................................................................................3

*Robinson* v. *Gov't of Malaysia*,
    269 F.3d 133 (2d Cir. 2001)...........................................................................................4

*Rynasko* v. *New York Univ.*,
    63 F.4th 186 (2d Cir. 2023) .........................................................................................10

*Smith* v. *Overseas Korean Cultural Heritage Found.*,
    279 F. Supp. 3d 293 (D.D.C. 2018)...............................................................................4

*Star Colbert* v. *Dougan*,
    724 F. Supp. 3d 304 (S.D.N.Y. 2024)............................................................................9

*Virtual Countries, Inc.* v. *Republic of South Africa*,
    300 F.3d 230 (2d Cir. 2002).......................................................................................5, 6

*Voigt* v. *Metcalf*,
    2020 WL 614999 (Del. Ch. Feb. 10, 2020) ..................................................................3

*Wasserstein Perella Emerging Mkts. Fin. LP* v. *Province of Formosa*,
    2000 WL 573231 (S.D.N.Y. May 11, 2000) ................................................................2

**Statutes:**

Foreign Sovereign Immunities Act of 1976, 28 U.S.C. § 1602 *et seq.*...........................1
    28 U.S.C. § 1605(a)(2).............................................................................................1, 5


Del. Code tit. 8, § 251(c).................................................................................................3 n.1

N.Y. Gen. Bus. Law § 349..................................................................................................10

**Other Authorities:**

Joshua Rosenbaum & Joshua Pearl, *Investment Banking: Valuation, LBOs, M&A, and IPOs* (3d ed. 2022) ..........................................................................................2

5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (4th ed. 2025)................................................................................................5

The Swiss Confederation's opening brief demonstrated that this action should be dismissed—as a matter of jurisdiction, as a matter of convenience, and as a matter of law. This action challenges an order of the Swiss banking regulator directed to Credit Suisse, a Swiss bank. Because the relevant activity of the Swiss government was all regulatory, Switzerland is entitled to sovereign immunity. The plaintiffs are alleged former holders of interests in Credit Suisse debt instruments governed by Swiss choice-of-law clauses. Their tactical forum choice is undeserving of any deference that could trump this action's overwhelming connections to Switzerland, where it is most sensibly litigated. And even if this action were to proceed in this Court, plaintiffs' asserted claims under New York law run headlong into threshold obstacles to relief.

I. **THE COURT LACKS JURISDICTION BECAUSE SWITZERLAND IS IMMUNE FROM SUIT**

Plaintiffs have neither pleaded facts, nor proffered evidence, to show that the asserted immunity exception applies here. The FINMA write-down order was not an act "in connection with a commercial activity of" Switzerland, and it did not "cause[] a direct effect in the United States." 28 U.S.C. § 1605(a)(2). To the extent any factual disputes must be resolved to reach that conclusion, the evidence submitted by the Swiss Confederation more than carries its burden.

A. **The FINMA write-down order was not an act taken in connection with a commercial activity of Switzerland**

Plaintiffs assert that Switzerland did "not challenge" their allegations that it took "commercial steps that a bank and investment bank would perform" and did "not identify any laws it enforced." Pls.' Br. 9, 10. There was no concession and no omission. Switzerland argued that it "acted nothing like an investment bank," and it specifically identified the laws that it enacted and enforced in its efforts to stabilize Credit Suisse and the broader financial markets. Def.'s Br. 10-11; *see also id.* 3-4 (citing FINMA Report 10, which identifies several statutes as "[t]he legal basis for [FINMA's] supervisory activities"); Mauerhofer Decl. (attaching FINMA Report).

1

Contrary to plaintiffs' contention, their allegations do not show that Switzerland provided "standard banking services" as "a sell-side advisor" to Credit Suisse—itself an investment bank. Pls.' Br. 8, 10. Rather, their allegations show that Swiss authorities, concerned by the precariousness of Credit Suisse's financial position and the risk posed to the financial markets, instructed it to prepare for an emergency sale. The complaint alleges, for example, that FINMA "demanded" that Credit Suisse prepare "a concrete shortlist of potential buyers" and "establish[] . . . a virtual data room." Compl. ¶ 94; *see also* Pls.' Br. 8. That is just the opposite of how an investment bank behaves with its client. Investment banks take directions, not give them—as even the textbook plaintiffs cite recognizes. *See, e.g.*, Joshua Rosenbaum & Joshua Pearl, *Investment Banking: Valuation, LBOs, M&A, and IPOs* 282 (3d. ed. 2022) ("Once the sell-side advisor has compiled a list of prospective buyers, it presents them to seller for final sign-off."); *id.* at 289 ("sell-side bankers . . . organize, populate, and manage the data room"). Regulators, by contrast, direct regulated parties—and that is what FINMA did here. *See, e.g.*, FINMA Report 35 ("FINMA made it clear to CS that it had to make concrete progress on" an "emergency sale" and "set up a data room," an instruction "CS only complied with . . . following repeated intervention[s]"). Plaintiffs' lone authority mentioning investment banking confirms that the commercial activity exception does not apply here. *See Wasserstein Perella Emerging Mkts. Fin. LP* v. *Province of Formosa*, 2000 WL 573231, at *2-3, *9 (S.D.N.Y. May 11, 2000) (where New York investment bank sued an Argentinian province that had engaged it, claiming breach of contract and seeking its unpaid fees, commercial activity exception applied because "[r]etaining a private investment bank . . . is an inherently commercial transaction").

Plaintiffs contend that Switzerland must have engaged in commercial activity by providing loans and financial guarantees to Credit Suisse and UBS—likening Switzerland's lending to the

2

borrowing by Argentina found to be "commercial activity" in *Republic of Argentina* v. *Weltover, Inc.*, 504 U.S. 607 (1992). Pls.' Br. 8-9. But *Weltover* did not remotely hold that any borrowing or lending by a foreign state was "commercial activity." Rather, it held that "[t]he commercial character of the Bonods"—the Argentinian bonds at issue—"is confirmed by the fact that they are in almost all respects garden-variety debt instruments," since they were "negotiable" and could "be held by private parties" and "traded on the international market." *Weltover*, 504 U.S. at 615; *Fir Tree Cap. Opportunity Master Fund, LP* v. *Anglo Irish Bank Corp.*, 2011 WL 6187077, at *13 (S.D.N.Y. Nov. 28, 2011) (bank's sale of non-performing commercial loan assets was activity that "private parties ordinarily perform"). By contrast, the loans and guarantees at issue here—totaling hundreds of billions of Swiss francs, neither negotiable nor tradeable, made available only to UBS and Credit Suisse as a result of their status as global systemically important banks under international and Swiss financial regulations—are plainly not "garden-variety debt instruments."[1]

Plaintiffs insist that whether a state's activity took the form of enacting or enforcing laws makes no difference in assessing its character—all that matters is whether the activity, regardless of form, could be performed by private parties. Pls.' Br. 10. But the Second Circuit has repeatedly rejected such a simplistic analysis. As Judge Lynch explained in *Pablo Star Ltd.* v. *Welsh Government*, 961 F.3d 555 (2d Cir. 2020), "without some understanding of context," the argument that a state's "actions are regularly performed by private parties" "is not much help in distinguishing sovereign from commercial conduct." *Id.* at 562. Context is "an important part of defining the activity being assessed." *Id.* That is precisely why *Barnet* v. *Ministry of Culture & Sports of the Hellenic Republic*, 961 F.3d 193 (2d Cir. 2020), held that Greece's claim of ownership

---

[1] Plaintiffs' invocation of Delaware law, Pls.' Br. 11, is irrelevant—and incorrect. *See Voigt* v. *Metcalf*, 2020 WL 614999, at *17 (Del. Ch. Feb. 10, 2020) (a merger "can be effectuated only if approved by a majority of the outstanding voting power" (citing Del. Code tit. 8, § 251(c)).

3

over an antiquity was sovereign activity. Any private party, the court acknowledged, could assert a claim of ownership, but only a sovereign could do so "to enforce a scheme of patrimony laws." *Id.* at 202. To "look only to the fact of a mere claim of ownership for purposes of our 'commercial activity' analysis would allow the exception to swallow the rule of presumptive sovereign immunity." *Id.* Plaintiffs rely on snippets of out-of-circuit cases, but the analysis in those cases accords with this Circuit's approach. *See Merlini* v. *Canada*, 926 F.3d 21, 23, 36-37 (1st Cir. 2019) (consulate's employment of clerical worker was commercial activity, not sovereign activity of administering law); *Smith* v. *Overseas Korean Cultural Heritage Found.*, 279 F. Supp. 3d 293, 296-97 (D.D.C. 2018) (decree creating national cultural foundation, not administering or enforcing law, did not render foundation's "building and operating [of] a museum" sovereign activity).

Even assuming, for argument's sake, that Switzerland's activity concerning the merger was "commercial," the write-down order was not "in connection with" that activity. *Garb* v. *Republic of Poland*, 440 F.3d 579, 587 (2d Cir. 2006) ("'in connection,' as used in the FSIA, is a term of art," to be "interpret[ed] . . . narrowly," and requiring a "'substantive connection' or a 'causal link'"). As FINMA itself explained, a write-down of the AT1 notes would have happened even if the merger did not. *See* Def.'s Br. 15; FINMA Report 19-20, 39-40. Plaintiffs assert that FINMA would not have ordered the write-down in a restructuring and that its report is unclear on the point. Pls.' Br. 12. But its report is unambiguous: "In the event of a restructuring, FINMA would have ordered . . . [c]apital measures," under which both "the share capital" and "[t]he AT1 instruments would . . . have been completely written off." FINMA Report 19. Plaintiffs supply no evidence to contradict the FINMA report, which they cited in their own pleading and whose authenticity is confirmed by FINMA. *See* Mauerhofer Decl.; *Robinson* v. *Gov't of Malaysia*, 269 F.3d 133, 141, 146 (2d Cir. 2001) (in a factual dispute, plaintiffs bear burden of production). That plaintiffs now

4

disclaim reliance on the report is no bar to its consideration. "District courts have broad discretion to consider relevant and competent evidence" in deciding a Rule 12(b)(1) motion. 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (4th ed. 2025).

Plaintiffs also argue that the requisite link exists because, even if the merger was not necessary to the order, the order was necessary to the merger. Pls.' Br. 11. But the Second Circuit has made clear that it is not enough to show that but for the challenged act, the commercial activity would not have occurred. In *Garb* v. *Republic of Poland*, 440 F.3d 579 (2d Cir. 2006), the plaintiffs challenged an act as expropriation, arguing that Poland then sold their properties. *Id.* at 586-87. The court acknowledged that "[h]ad there been no expropriation, there would have been no properties to treat in a commercial manner," but held that such a connection "is simply too 'attenuated,' and not substantive enough, to satisfy § 1605(a)(2)." *Id.* at 587; *see also Azima* v. *RAK Inv. Auth.*, 305 F. Supp. 3d 149, 166-67 (D.D.C. 2018) (finding causal link because purpose of the challenged act (hacking) was to extort advantage in foreign state's commercial dealings).

**B.      The FINMA write-down order caused no direct effect in the United States**

Plaintiffs also fail to show that the write-down order "cause[d] a direct effect in the United States." § 1605(a)(2). To be "direct," an effect must "follow[] as an immediate consequence of the defendant's activity." *Daou* v. *BLC Bank, S.A.L.*, 42 F.4th 120, 135 (2d Cir. 2022). FINMA did not execute the write-down; rather, it ordered Credit Suisse to. Plaintiffs do not cite a single case holding that a foreign state's act had a "direct" effect in the United States where the effect occurred only because of an intervening act by another party. In *Virtual Countries, Inc.* v. *Republic of South Africa*, 300 F.3d 230 (2d Cir. 2002), for example, the foreign state's press release did not have a "direct effect" in this country because it "had its initial effect on third part[ies] . . . who had to take further action as a result of the press release in order for the American plaintiff to be affected at all." *Atlantica Holdings* v. *Sovereign Wealth Fund Samruk-Kazyna JSC*, 813 F.3d 98, 114 (2d

5

Cir. 2016). Just so here. Any ultimate effect in this country depended on "further action" by Credit Suisse. *Cf. id.* at 115 (finding direct U.S. effect because "[u]nlike the press release in *Virtual Countries*, [the foreign state]'s misrepresentations acted directly on" U.S. investors). Plaintiffs contend that Credit Suisse was not a "third party." Pls.' Br. 14. But they acknowledge that Credit Suisse had the right to appeal the write-down order, Müller-Chen Decl. ¶¶ 18-19, and they cite nothing to show that a private bank is not "independent" of a foreign state under the FSIA.

Furthermore, plaintiffs do not even show that *Credit Suisse*'s actions had a "direct effect" in the United States. The AT1 notes registered in DTC's name were all "deposited with" Citibank, N.A., London Branch. Reddy Decl. Ex. 1, Credit Suisse AT1 Notes Terms and Conditions at ECF p. 60 (§ 1(b)(i)) (Dec. 11, 2013); Def.'s Br. 4 n.1. Insofar as Credit Suisse "exerted any force" on the notes by executing the write-down order, it did so where they were located—London. *Daou*, 42 F.4th at 137 ("[i]nsofar as [the bank]'s actions exerted any force on the [plaintiffs]' money, they did so in Lebanon, where that money was located"). The devaluation of plaintiffs' alleged beneficial note interests, held indirectly via DTC, was a second-order effect. Plaintiffs also point to Credit Suisse's supposed obligation to make payments in New York. Pls.' Br. 14. But they cite no case holding that an obligation not owed by the foreign state can provide a basis to find a direct effect in the United States. *See Virtual Countries*, 300 F.3d at 240 (no direct effect where "[n]o obligation—contractual or otherwise—ran to the plaintiff from the Republic, let alone one to be performed in the United States"). In any event, the note terms provide that "[a]ll payments required to be made" to registered holders would be made to "the Principal Paying Agent*,*" *i.e.*, "Citibank, N.A., London Branch." Reddy Decl. Ex. 1, Notes Terms at ECF p. 59 & p. 78 (§ 9(a)(i)). The prospectus page plaintiffs cite states only that payments will be made to DTC, not *where* they must be made. Pls.' Br. 14 (quoting Reddy Decl. Ex. 1, Notes Prospectus at ECF p. 99).

## II.  THE COURT SHOULD DISMISS THIS ACTION IN FAVOR OF A SWISS FORUM

Even if this Court has jurisdiction over this action, it should not exercise it.  It should instead dismiss this action to be litigated in Switzerland, the far and away more convenient forum.

Plaintiffs contend that their choice of forum is "entitled to significant deference."  Pls.' Br. 18.  But their forum choice is entitled to "great deference" only if it is their "home forum," and thirty-four of the forty-seven plaintiffs are foreign residents.  *Iragorri* v. *United Techs. Corp.*, 274 F.3d 65, 71 (2d Cir. 2001); Compl. ¶¶ 12-58.  And whether a plaintiff is "domestic or foreign," the "more it appears that the plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons—such as attempts to win a tactical advantage resulting from local laws that favor the plaintiff's case . . . or the defendant's unpopularity in the region," "the less deference the plaintiff's choice commands."  *Iragorri*, 274 F.3d at 72.  Here, there is no need to guess if plaintiffs were "forum-shopping."  *Id.*  Their counsel publicly said so.  Asked "[w]hen you decided to file the suit, why did you do so in New York?", their lead lawyer acknowledged that "[t]he first litigation" by his firm on behalf of AT1 noteholders against the Swiss Confederation "was brought in Switzerland, which is sort of an obvious choice given that the regulatory action that wiped out their investments happened in Switzerland."[2]  He then explained:

> But it's always been my clients' belief that it would be best to provide a litigation hedge against the home court advantage that the Swiss government is certainly likely to have in their own Swiss courts. . . . [I]n the United States, . . . we have very broad discovery into the facts and circumstances that gave rise to the case available in our legal proceedings and that's not true of Switzerland.  So one of the reasons that we brought the case in the United States . . . is so that we can take advantage of that discovery process.

---

[2] Bloomberg TV interview of Dennis Hranitzky, June 6, 2024, https://www.bloomberg.com/news/videos/2024-06-06/credit-suisse-bondholders-take-at1-campaign-to-new-york-video.  *See also* Second Reddy Decl. Ex. 1 (interview transcript); *id.* Ex. 2, Press Release, Quinn Emanuel Represents Over 1,000 Investors in AT1 Bonds in Fight Against FINMA Decision (May 4, 2023).

Plaintiffs nonetheless contend that this Court has no discretion to dismiss this action because Switzerland is not an "available" forum. Pls.' Br. 15-16. Plaintiffs do not dispute that the three-year statute of limitations to bring a claim for compensation against the Swiss Confederation under the Swiss Liability Act has not yet run. But they argue that such a claim is effectively time-barred because one of its elements would be the illegality of the write-down order—and, under Article 12 of the Liability Act, that can be established only through a separate administrative law appeal commenced within thirty days of knowledge of the order, a deadline they have missed. Plaintiffs misapprehend Swiss law. The judicial decision relied on by their own expert holds that Article 12 does not apply to claimants not served with the challenged order in writing and with instructions as to rights of appeal. *See* von Salis Supp. Decl. ¶¶ 5-12. As their expert concedes, the write-down order was addressed only to Credit Suisse. *See* Müller-Chen Decl. ¶ 18.

In any event, the *forum non conveniens* inquiry is not so easily manipulated. The Second Circuit, like other circuits, recognizes the general principle that "if the plaintiff's suit would be time-barred in the alternative forum," that forum is not "available" "in a practical sense." *Chang v. Baxter Healthcare Corp.*, 599 F.3d 728, 736 (7th Cir. 2010) (Posner, J.) (collecting cases, including *Bank of Credit & Com. Int'l (Overseas) Ltd. v. State Bank of Pakistan*, 273 F.3d 241 (2d Cir. 2001)). "There is an exception, however, for cases in which a plaintiff seeks to defeat dismissal by waiting until the statute of limitations in the alternative forum has expired and then filing suit in his preferred forum (with the longer limitations period) and arguing that the alternative forum is inadequate." *Id.* That is exactly what plaintiffs did here. By their counsel's telling, they "always" believed it "best to provide a litigation hedge" against the Swiss action, and they nowhere deny deliberately missing the 30-day deadline to open a second litigation front in New York.

"It would be a strange world if a litigant could 'bootstrap' himself into a New York court

8

by missing the statute of limitations in the proper forum." *Castillo* v. *Shipping Corp. of India*, 606 F. Supp. 497, 504 (S.D.N.Y. 1985) (even assuming FSIA jurisdiction, dismissal is appropriate); *see Compania Naviera Joanna SA* v. *Koninklijke Boskalis Westminster NV*, 569 F.3d 189, 202-03 (4th Cir. 2009) (affirming dismissal where plaintiff "*deliberately* allowed any deadline for filing claims" in China "to pass"). To let plaintiffs lock in their forum choice by this maneuver would reward forum-shopping—contrary to *Iragorri*'s instruction to give "diminishing deference to a plaintiff's forum choice to the extent that it was motivated by tactical advantage." 274 F.3d at 73.

Plaintiffs' claims challenge actions of a Swiss regulator, against a Swiss bank, as violations of notes governed by Swiss law. *See, e.g.*, Compl. ¶¶ 132, 136, 142, 144. The relevant witnesses and evidence are in Switzerland, and the legal issues are governed by Swiss law. In these circumstances, this Court has repeatedly dismissed actions in favor of a Swiss forum. *See Star Colbert* v. *Dougan*, 724 F. Supp. 3d 304, 339 (S.D.N.Y. 2024); *In re Alcon S'holder Litig.*, 719 F. Supp. 2d 263, 276 (S.D.N.Y. 2010); *see also* von Salis Supp. Decl. ¶¶ 1-2, 13-20 (responding to assertions of plaintiffs' Swiss law expert). Plaintiffs argue that the notes' Swiss choice-of-law clause does "not apply" because Switzerland is "not a party to" the notes. Pls.' Br. 19. But they cannot claim a violation of the note terms and escape the clause. *See Bausch & Lomb Inc.* v. *Mimetogen Pharms., Inc.*, 2016 WL 2622013, at *7 (W.D.N.Y. May 5, 2016) (a contract signatory "is estopped from avoiding the choice-of-law provision in the very Agreement it not only signed, but also directly relies on for its claims"). The decisions they invoke to argue that Swiss law can be rejected as contrary to "public policy" have no bearing here. *See Brown & Brown, Inc.* v. *Johnson*, 25 N.Y.3d 364, 370 (2015) (declining to enforce non-compete clause); *Corporación Mexicana de Mantenimiento Integral* v. *Pemex-Exploración y Producción*, 832 F.3d 92, 97 (2d Cir. 2016) (declining to defer to Mexican court's retroactive nullification of arbitral award).

9

### III. THE COMPLAINT FAILS TO STATE A CLAIM FOR RELIEF

Swiss law governs this action. Assuming, however, only for the purpose of this Rule 12(b)(6) motion, that New York law applies, as plaintiffs claim, the complaint fails to state a claim.

**Conversion.** Plaintiffs deny that their claim is "predicated on a mere breach of contract." Pls.' Br. 22 (quoting *Rynasko* v. *New York Univ.*, 63 F.4th 186, 196 (2d Cir. 2023)). But they allege expressly that "[t]he Write-Down Direction . . . violated, the AT1s' terms." Compl. ¶ 132. Plaintiffs assert that their interests are recorded "in real time," but that is irrelevant to whether each plaintiff's interest is "segregated and specifically identifiable," as required to support a conversion claim. *Rynasko*, 63 F.4th at 196. As their own authority recognizes, "DTC holds deposited securities in 'fungible bulk,' such that its participants do not own specifically identifiable shares." *Perrin* v. *Sw. Water Co.*, 2014 WL 10979865, at *2 (C.D. Cal. July 2, 2014) (cited in Compl. ¶ 11). The complaint also fails to plead a claim for tortious interference with contract. Plaintiffs do not identify any breach caused by the write-down order. As they do not dispute, Credit Suisse itself cautioned that satisfaction of the write-down conditions depended upon *FINMA*'s "subjective" determination. *See* Def.'s Br. 4-5. And plaintiffs disregard the decisions "uniformly reject[ing]" tortious interference claims that challenge discretionary acts of public officials. *Id.* at 24.

**N.Y. Gen. Bus. Law § 349.** Plaintiffs argue that Switzerland violated § 349 by "fail[ing] to properly implement" the note terms. Pls.' Br. 25. But "[p]rivate contract disputes" do not "fall within the ambit of [§ 349]." *Maurizio* v. *Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000).

\*   \*   \*

For the foregoing reasons and those stated in the opening brief, the complaint should be dismissed.

Dated: May 5, 2025
       New York, New York

WACHTELL, LIPTON, ROSEN & KATZ

By: /s/ William Savitt

William Savitt
Anitha Reddy
Alexis J. Abboud

51 West 52nd Street
New York, New York 10019
Telephone: (212) 403-1000
Facsimile: (212) 403-2000

*Attorneys for the Swiss Confederation*

11

## CERTIFICATION OF COMPLIANCE

This memorandum complies with the page-count limit of Rule 4(c)(ii) of Judge Ho's Individual Rules and Practices in Civil Cases because it contains 10 pages, excluding the parts of the memorandum exempted by Rule 4(c)(iv).

Dated: May 5, 2025
       New York, New York

WACHTELL, LIPTON, ROSEN & KATZ

By: *[signature]*

William Savitt
Anitha Reddy
Alexis J. Abboud

51 West 52nd Street
New York, New York 10019
Telephone: (212) 403-1000
Facsimile: (212) 403-2000

*Attorneys for the Swiss Confederation*